No. 2713.

## Frank Myers v. The State.

1. THEFT—EVIDENCE—BRANDS.—While a recorded brand is evidence of ownership, it and the brand found upon the animal must correspond and be identical, and it must appear on the part of the animal indicated in the record, or the discrepancy in this regard must be satisfactorily explained by the evidence. See the opinion for evidence *held* to show that the brand found upon the animal was different from the brand set out in the record, and, therefore, being the only evidence on the issue of ownership, and not sufficient upon that issue, is insufficient to support the conviction.

2. SAME.—See the opinion and the statement of the case for evidence *held* to have been improperly excluded, because, under the facts in this case, it tended to support an issue of identity of the animal.

3. SAME.—CHARGE OF THE COURT.—The evidence in this case tending to support the defense that the accused killed the alleged stolen animal by direction of his employer, the charge of the court was erroneous in not instructing the jury that if they believed that the accused took the said animal by direction of his employer, for the use and benefit of his employer, believing at the time that his said employer owned or had a right to appropriate the animal, then the accused would not be guilty of theft, because of the absence of the fraudulent intent.

4. SAME—FACT CASE.—See the statement of the case for evidence *held* insufficient to support a conviction for theft, because insufficient to support the allegation of ownership of the alleged stolen animal.

APPEAL from the District Court of Taylor. Tried below before the Hon. T. H. Conner.

The conviction in this case was for the theft of one head of cattle, the property of John A. Walker, in Taylor county, Texas, on the seventh day of January, 1887. The penalty assessed against the appellant was a term of two years in the penitentiary.

Deputy Sheriff James Humphreys was the first witness for the State. He testified that, on about January 7, 1887, he and Dick Cato went to the ranch of Dock Grounds, in Taylor county, to levy on some horses said to belong to Grounds. When they reached Grounds's ranch, they found the defendant and one Tom Short in the lot, skinning a beef. Witness asked them where any of Grounds's horses could be found. They told him that a bunch of horses had just passed beyond the hill. They displayed some uneasiness and a great anxiety for witness and Cato to leave. Witness and Cato got off their horses and proceeded to help defendant and Short with the beef. The witness knew the cow at the time, but said nothing about it. Cato cut the beef's head off. Witness helped to carry a quarter of the beef into the smoke house. He and Cato passed that night at the ranch and ate some of the beef. While the beef was being quartered, Cato turned up one side of the hide, looked at the brand, and said that it was a half circle S cow. The witness made no examination of the brands on the hide that night. On the next morning the witness called on Jack Green to show him the hide. The hide was found lying in the corner of the fence, with two strips cut out of it. No brands were found on the pieces of hide left. Witness, after examining the pieces of hide, started back to the house, and, en route, met the defendant. Defendant asked witness if he knew the cow, and witness replied that he did; that the cow was branded with a half circle S on the left side, and BEK on the right side. Defendant said that witness was right; that it was a straight S under a half circle, and that he had done wrong in killing the cow, and added: "I don't want you boys to give me away." Witness then arrested defendant, and some time later started with him to town. Defendant on the way made an effort to escape, but witness fired several shots at him, killed his horse and secured him. Witness did not shoot to kill, but to stop the flight of defendant. Witness had often, during

the previous four or five months, seen the butchered cow on the range. All this occurred in Taylor county.

On his cross examination, the witness said that it was his understanding that Jack Green was the foreman of Grounds's ranch, and that defendant was an employe under him. When defendant asked witness not to "give him away," he said that for several days he had been looking for a cow in the Y—Y brand, but could find none fat enough for beef, and that he took the cow in question, thinking she was an estray. Two or three days after the arrest of defendant, witness went back to Grounds's ranch and arrested Tom Short.

Dick Cato testified, for the State, that he went to Grounds's ranch with James Humphries to execute a legal writ upon some of Grounds's horses. Defendant and Tom Short were skinning a beef in the lot when witness and Humphries arrived. During the time that witness and Humphries were helping defendant with the beef, as stated by Humphries, witness lifted one side of the hide and saw that it was branded with a half circle S, and perhaps with something else. When witness and Humphries first reached the ranch, defendant said that the cow was in the BIK brand, one of Grounds's "little brands." During the time that witness and Humphreys were at the ranch, while the cutting up of the beef was in progress, Short and defendant showed considerable uneasiness and some anxiety for witness and Humphries to leave, and told them several times that they had recently seen some horses pass over the hill. On the next morning the defendant made several appeals to witness and Humphries not to give him away. The half circle S was known as the Peacock brand. When witness first reached the ranch, Short said that he knew nothing about the cow; that Myers drove her up, and called to him to bring him the gun, which he did. Myers at that time said the cow was of the BIK brand, which was one of Grounds's little brands.

On cross examination, the witness stated that he and Humphries reached the ranch on Friday evening, remained Friday night, Saturday and Saturday night, and started to town on Sunday. They did not arrest defendant until they started back on Sunday. The brands on the hide were dim, and the witness only traced the half circle S brand by running his finger over it. He did not decipher the other brand. The witness here made the brand, as follows: $\widehat{S}$, and said that on the Tom Short trial he testified that the S stood straight up, but now thought

that it was inclined—"slanchways." The brand, however, was dim and the hide was rumpled up, and witness could not possitively say whether the brand was straight or inclined.

John A. Walker was the next witness for the State. He testified that he lived in Colorado City, Mitchell county, Texas. The witness, from December, 1886, to March, 1887, owned the old Peacock stock of cattle. Those cattle, with other property, were transferred to the witness as the assignee of Peacock Bros. & Co. The Peacock stock of cattle numbered about five thousand head. The ranch of Peacock Bros. & Co. was in Tom Green county, and their holding brand was a lateral, lazy, or inclined S under a half circle. Most of the Peacock cattle, when in the possession of the witness, were in the old Peacock pasture, but there were some of the animals scattered over the range. No person but the witness had authority to handle, dispose of or control any of the Peacock cattle. Witness never authorized defendant nor any one else to kill the cow described in the indictment. After the witness took charge of the Peacock cattle as assignee, he found that a few of the cattle were branded BEK on the right side, and he was informed that the said BEK cattle were a small stock purchased and put in the Peacock "holding" brand. At the close of this witness's testimony, the State introduced the deed of assignment to the witness as the assignee of Peacock Bros. & Co., and the record of brands of Tom Green county, which showed the Peacock cattle brand to be a lateral or horizontal S with a half circle over it, placed on the left side.

The State rested.

Mrs. M. A. Butler was the first witness for the defense. She testified that defendant and Mr. Dock Grounds stayed all night at her house in Merkel, on or about January 4, 1887. On the next morning Grounds told defendant to go back to the ranch and kill a beef for ranch use.

T. C. Scott testified that he lived in Comanche county, Texas. He knew that there were two different stocks of cattle in the BEK brand in Comanche and Callahan counties, and that there was a law suit pending about them. Witness had been recently in jail for carrying a pistol. Witness defended the charge against him for carrying the pistol, on the ground that he was a traveler, but he was convicted. He had never before been under arrest.

Tom Short testified, for the defense, that, in January, 1887, he

was employed as cook at the ranch of W. A. Grounds, in Taylor county. He was present when Grounds started to Merkel on the evening of January 3, 1887, to take the train to Abeline, and heard Grounds tell George Herron to tell Myers, when he came back, to kill the animal which was afterward killed by witness and Myers, for the use of the ranchmen. In the same connection Grounds said that somebody had barred out the brand on the said animal for the evident purpose of raising a dispute about her. He also told witness to pickle the meat. Defendant came back to the ranch on the following day, January 4, 1887. Herron was then there. Herron is now dead. Grounds did not come back before the cow was killed. Jack Green was ranch boss, and got back to the ranch on the evening that the cow was killed. D. Y. Russell, the ranch book keeper, was there when the cow was killed. Defendant was an ordinary hand on the ranch, and had nothing to do with supplying it with beef. Witness had been tried and acquitted of complicity in the offense charged against the defendant.

Cross examined, the witness stated that George Herron was a negro, and, according to witness's information, the said Herron met his death by hanging himself in the Nolan county jail. Witness did not remember that he told County Attorney Hardwicke that, if Hardwicke would dismiss the prosecution against him, he would tell Hardwicke all he knew about other matters, but that he knew nothing about the Myer's case.

D. Y. Russell testified, for the defense, that he was the book keeper on Dock Grounds's ranch at the time the cow involved in this prosecution was killed. Grounds then owned a large number of small herds of cattle in different brands that he had bought from time to time. Witness could not say, without referring to the books, how many brands Grounds owned, but thought there must have been between thirty and forty. Witness had no recollection of ever furnishing defendant with a list of the brands, and did not think defendant knew all of Grounds's cattle brands. Defendant did not furnish beef for the ranch consumption. Witness knew nothing about the cow that was killed, nor could he swear that Myers did not know all of Grounds's cattle brands. Witness did not recollect that he ever told County Attorney Hardwicke that defendant knew all of Grounds's brands.

Lige Carter testified, for the defense, that for six or seven years he had been outside boss for Mr. Bryant, a cattle man.

He was pretty well acquainted with all the brands in the country. About two years before this trial 'the witness drove a certain brown and white crumpled horn cow from beyond the Colorado river to the range near Dock Grounds's ranch. That cow was branded with a straight S under a half circle; and the letters BEK, and she had a calf. Witness put the calf in the BEK brand, when he turned it and its mother loose. Witness did not know whether or not the cow about which he testified and the cow killed by defendant were the same. The defense proposed to prove by this witness that he put the BEK brand on the calf for Mr. Beck, of Callahan county. The court excluded that testimony, and the ruling is made the subject matter of the second head note of this report.

The defense introduced in evidence the following letter:

"AT RANCH, February 2, 1887.

"Frank Myers, Esq., Abilene:

"DEAR SIR: I understand that you are trying to get me into trouble by swearing, and trying to get others to swear, that I instructed you to kill a stray beef for the ranch, which you know is not so, for you know that I never had anything to do with beef killing on the ranch. Now, Frank, as you have commenced to try to injure me, I will not try to help you in any manner, for there are several little brands that you are suspected of keeping up, and may be proved on you at any time. You must remember the SAB brand, and what you done for that on three of my calves. Yours, etc.,

"W. A. GROUNDS."

The defense rested.

W. A. Grounds testified, for the State, in rebuttal, that it was not true, as testified by Tom Short, that he, witness, on the eve of going to Merkel, on January 3, 1887, in the presence of said Short, told one George Herron to tell defendant, when he got back to the ranch, to kill the particular animal described in this indictment, or any other particular animal, for beef, and direct Short to pickle the meat. He said nothing about somebody having barred the brand out, and that the easiest way to settle the dispute was to kill the animal.

Cross examined, the witness said that he wrote the letter introduced in evidence by the defense. He intended at first to help "the boys" in their trouble, but, when he found them trying to

defend themselves at his expense, he decided to trouble himself no more about them. The three calves referred to in the letter as having been placed in the SAB brand belonged to witness, and were so branded without witness's consent. Mrs. M. A. Butler was milking the mothers of those calves at the time of the branding of the calves, but did not own the said animals as a gift from witness. Witness owned forty or fifty brands. He did not know them all himself, and did not think that defendant did. Defendant never furnished witness's ranch with beef. The manager, Jack Green, furnished the beef to the ranch. Witness never owned any cattle branded BEK or half circle S. His "holding" brand was Y—Y. That brand was on all of the stock in the brands purchased by witness, except a very few which were overlooked.

County Attorney Hardwicke testified, for the State, in rebuttal, that after Short's arrest, and while in jail charged with this offense, Tom Short sent for witness and told him that if he, witness, would dismiss the case against him, he would tell what he knew about other cases, but that he knew nothing about the case against the defendant.

The State closed.

Mrs. M. A. Butler testified, for the defense, in rebuttal, that the three cows and calves, referred to by Dock Grounds in his letter and in his testimony, belonged to her, and were given to her by said Grounds, and were put in the SAB brand by direction of Grounds. Witness was not married to Grounds, but had one child by him.

The motion for new trial raised the questions discussed in the opinion.

No brief for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. To establish the allegation of the ownership of the alleged stolen animal, the State relies solely upon the brand upon said animal, undertaking to show that said brand was the recorded brand of the alleged owner. A certified copy of the record of the brand of said alleged owner was read in evidence by the State, and, as shown by said record, said brand is thus: ⚮ placed upon the left side of the animal upon which it is used. There is no evidence that this brand was found upon

the alleged stolen animal. All the testimony shows that the brand found upon said animal was either a perpendicular $\mathbb{S}$ or an inclined $\widehat{\mathcal{S}}$. It will be seen at a glance that the recorded brand and the brand found upon the alleged stolen animal are essentially different. While a recorded brand is sufficient evidence of ownership, such brand and the brand found upon the animal must correspond, and be identically the same, and the brand upon the animal must even be upon the particular part of the body designated in the record, or it will not afford sufficient evidence of ownership, unless the discrepancy is explained satisfactorily by other evidence. (Harwell v. The State, 22 Texas Ct. App., 251; Priesmuth v. The State, 1 Texas Ct. App., 480.) We are of the opinion that the evidence does not prove the allegation of ownership, and is therefore insufficient to sustain the conviction.

As the case must be remanded for another trial, we will notice and determine some other questions presented in the record, and which may arise on another trial. It was error, we think, to reject the proposed testimony of the witness Carter in regard to the brand BEK, which he testified he placed upon a certain calf. If said calf and the alleged stolen animal were the same it would be competent and material for the defendant to show that said brand was not placed upon said animal for and as the brand of the alleged owner, but for another person, whose brand it was claimed to be. Such testimony would tend to weaken the State's testimony respecting said brand by accounting for its presence upon the animal upon another hypothesis than that the animal belonged to the alleged owner, he having testified that he owned some cattle in that brand. While said brand, not being recorded, was incompetent evidence to prove ownership, still it was evidence to identify the animal, and it was the defendant's right, if he could do so, to explain away and destroy whatever probative force it might have against him.

There was evidence tending to show that the defendant killed the alleged stolen animal for beef, and that he did so by the direction of one Grounds, whose hired hand he was at the time. If he took said animal by direction of said employer, and for the use and benefit of said employer, believing at the time that his said employer owned or had a right to appropriate the animal, he would not be guilty of theft, because the essential ingredient of theft—that is, a fraudulent intent—would be wanting. (Willson's Texas Crim. Laws, sec. 1295.) There being some evidence

to support·this theory, the court should have submitted the
matter to the jury under proper instructions. (Willson's Texas
Crim. Laws, sec. 1306.)

We have examined other supposed errors complained of, but
none of them are, in our judgment, substantial. . The only errors
committed are, in our opinion, those we have mentioned. Be-
cause of said errors, and because the conviction is not sustained
by the evidence with reference to the allegation of ownership,
the judgment is reversed and the cause is remanded.

*Reversed and remanded.*